W. STEWART AND OTHERS V. STEPHEN CROSBY, COM'R. G. L. O.

We think it free from doubt, that the Ordinance, appended to the Constitution, is a part of the fundamental law of the land. Having been framed by the Convention that framed the Constitution of the State, and adopted by the Convention and the people, along with the Constitution, it is of equal authority and binding force, upon the executive, legislative and judicial departments of the government of the State, as if it had been incorporated in the Constitution, forming a component part of it.

Between the first day of July, 1848, and the tenth day of February, 1852, the vacant and unappropriated land within the limits of Peters' Colony was open to general location ; and if it were doubtful whether the remedy for the enforcement of the rights acquired by such locations, was impaired by the Act of the latter date, that doubt is removed, as to locations without the limits which had been sectionized by the contractors of the colony, by the Act of the 7th of February, 1853.

The colonists contemplated by the second Section of the Act of 1853, supplementary to an Act relating to lands in Peters' Colony, were thereby entitled to a preference right over the contractors, in making their selections and locations, for a period of three months thereafter ; and after the passage of that Act, the Commissioner of the General Land Office was not authorized by law to issue patents to the contractors upon the selections and locations made by them, until they complied with the requirements of that Act.

This appeal was returnable to Austin ; was transferred to, and decided at Galveston ; a re-hearing was applied for at Tyler and granted, and the case ordered to be re-docketed at Austin.

Appeal from Travis. Suit by the appellants, as trustees of the Texas Emigration and Land Company, praying an injunction against Stephen Crosby, Commissioner of the General Land Office, to restrain him from issuing patents to persons generally, who had made locations within the limits of the colony of said company, and particularly from patenting the locations of Catlett and Johnson, who were also made defendants.— They also prayed for a *mandamus* to compel the Commissioner to issue patents to them on four surveys made by them by virtue of certificates issued to them in accordance with the

law of February 10th, 1852, in relation to lands in Peters' Colony. The locations of Catlett and Johnson were made after the 1st of July, 1848, and before the 10th of February, 1852, outside of the sectionized portion of said colony. The Court below refused the injunction and mandamus, and on the prayer of the defendants, Catlett & Johnson, ordered a mandamus to the Commissioner to issue patents to them.

This case was appealed to Austin, 1854; was transferred to Galveston, where the Opinion, which now stands as the Opinion of the Court, was delivered. Afterwards at Tyler, 1855, the Court, on application of the appellants, granted a re-hearing, and ordered the case to be re-docketed at Austin, deciding, as the Reporters are informed, that the three consecutive sessions at Austin, Galveston and Tyler constitute but one Term.

*I. A. & G. W. Paschal* and *T. H. Duval,* for appellants.

*J. A. & R. Green* and *A. J. Hamilton,* for appellees.

WHEELER, J. In the argument of this case, questions of great moment to the parties, involving an inquiry respecting the constitutionality of the legislative enactments, which they have invoked and on which they rely to maintain their claims, have been discussed; and the enactments in question have been examined in reference to their constitutionality and effect. But, as the decision of the case, before the Court, in our opinion, depends upon a few evident propositions, plainly deducible from the record and the legislation applicable to the case, which are free from difficulty; and does not necessarily involve a question of the constitutionality of legislative enactments, examination or inquiry, with a view to the decision of that question, is unnecessary.

The time remaining will not permit an extended discussion of even the material questions in the case, on which its decision

depends.   But as a decision at the present Term is earnestly
desired by the parties, and may be important to the attain-
ment of their rights, we shall proceed to dispose of the case,
upon grounds deemed clear, and sufficient to determine the
litigation between the parties ; and shall state only our con-
clusions upon the material questions involved in the decision ;
so as to indicate distinctly the grounds of our judgment ;
reserving for a future occasion, it may be a future case, the
statement at length of the reasons on which we rest our
conclusions.

For the present, then, it may suffice to say, we think it free
from doubt, that the Ordinance, appended to the Constitution,
is a part of the fundamental law of the land.   Having been
framed by the Convention that framed the Constitution of the
State, and adopted by the Convention and the people along
with the Constitution, it is of equal authority and binding
force, upon the Executive, Legislative and Judicial Depart-
ments of the Government of the State, as if it had been incor-
porated in the Constitution, forming a component part of it.

We are further of opinion, that the colonization contract of
the 20th of January, 1843, expired and was determined by its
own express terms and limitation, and by the terms and limita-
tion of the Joint Resolution under which it was made, on the
first day of July, 1848 ; and that, therefore, the vacant lands
embraced within the territorial limits reserved and set apart
for the purpose contemplated by the contract, and not appro-
priated under it ; or to which the colonists had not acquired
rights under the provisions of the Ordinance and laws enacted
in pursuance thereof ; or the contractors by the terms, stipu-
lations and conditions of their contract ; or which had not
been, in the words of the contract, " conveyed to them, or
acquired by them, or appropriated under the provisions of
this contract," instantly reverted to, and became a part of the
vacant public domain of the State ; and so remained until the
passage of the Act of the 10th of February, 1852 ; and that

the rights acquired by valid locations, made upon vacant lands within the limits of the colony, after the first day of July, 1848, and before the passage of the Act of the 10th of February, 1852, not inconsistent with the rights secured to actual settlers and colonists by the Ordinance and laws enacted for their benefit in pursuance thereof, were not divested or impaired by the last mentioned Act. And if it were doubtful whether the remedy for the enforcement of the right was impaired by any of its provisions, that doubt is removed, as to locations without the limits which had been sectionized by the contractors of the colony, by the Act of the 7th of February, 1853.

And further, that the colonists contemplated by the second section of the last mentioned Act, were thereby entitled to a preference right over the contractors, in making their selections and locations, for a period of three months thereafter ; and that, after the passage of that Act, the Commissioner of the General Land Office was not authorized by law to issue patents to the plaintiffs upon the selections and locations made by them, which conflicted or might conflict with those legally made, or to be made by colonists ; or with locations made by others, between the first day of July, 1848, and the 10th of February, 1852 ; nor until there had been a compliance on their part with the requirements of the law providing for their issuance, and intended to secure to the State the rights reserved for the benefit of colonists, and to the latter their preferred rights.

And further, that the Commissioner was authorized and required to issue patents to the appellees, upon their locations and surveys ; which locations were made after the first day of July, 1848, and prior to the tenth of February, 1852, upon vacant lands within the limits of the colony and without the portion of it which had been sectionized by the contractors ; and which did not conflict with any right or privilege secured by law to an actual settler and colonist.

And, from the application of these several propositions to the case before the Court, it results, that the Court adjudged rightly upon the merits of the case, in dissolving the injunction, refusing the mandamus and dismissing the plaintiff's petition ; and in holding that the appellees, Catlett & Johnson, were entitled to patents upon their locations ; and though an order directing their issuance, may not have been necessary, it was not improper or erroneous, as affecting any rights of the appellants.   And we are therefore of opinion that there is no error in the judgment, and that it be affirmed.

                                            Judgment affirmed.