**BASS et al. v. ALBRIGHT et al.**

No. 4294.

Court of Civil Appeals of Texas. Texarkana.
April 11, 1933.

Rehearing Denied April 20, 1933.

Gordon Huffmaster, of Longview, Jones & Jones, of Mineola, and W. H. Sanford, of Longview, for appellants.

Turner, Rodgers & Winn, Thompson, Knight, Baker & Harris, and Lewis M. Dabney, Jr., all of Dallas, Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, Woodward & Coffee, of Big Springs, and Hobart Key, of Marshall, for appellees.

LEVY, Justice (after stating the case as above).

There is presented for decision the points in view of: (1) The validity of the judicial sale of the land by the sheriff on July 4, 1876, and (2) the sufficiency of the description of the land in the official return of the sheriff on the writ of execution and in the

sheriff's deed to identify the land levied on and sold. The appellees sought to show divestiture of the title out of John N. Reynolds by an execution sale under a judgment against John N. Reynolds. It was proven that on June 12, 1876, the execution was levied on the whole 320-acre tract as belonging to John N. Reynolds. On June 28, 1876, sixteen days after the levy, John N. Reynolds and his wife executed and delivered a warranty deed to B. R. Bass and V. A. Davis, ancestors of appellants. On July 4, 1876, six days after the date of the deed mentioned, the sheriff sold the entire survey, less 200 acres reserved for a homestead, to W. G. Carroll. The execution under which the judicial sale was made was issued by the district clerk of Gregg county on February 5, 1876, and was by its terms made returnable "on or before the next term of said District Court to be holden on the second Monday in May, A. D. 1876." The law then in force provided for the writ to be returnable to the first day of the next regular term of the court. Acts of 1873, p. 209, 7 Gammel's Laws of Texas, p. 661. The next regular term of the district court of Gregg county after the date of the execution was fixed by law at that date in 1876 to begin on the second Monday in May. 8 Gammel's Laws of Texas, p. 382. The new Constitution of 1876 was effective by official proclamation of the Governor on April 18, 1876. It is insisted by the appellants that the judicial sale was a nullity and wholly ineffectual to divest title out of John N. Reynolds, and as well out of Bass and Davis, his grantees, because the levy was made and sale was held after the return date of the writ of execution and at a time when the writ was functus officio. The appellees insist to the contrary that the writ of execution was not functus officio at the date of the levy and of the sale, because its return date had been extended and continued in force from the May term of the district court which was in existence when the writ of execution was issued, to the term of court which was afterwards altered by law to a later date in July, which convened July 17, 1876. It is urged by appellees that the entire ordinance of the constitutional convention, fixing the terms of the courts of the new districts throughout the state, is a part of the Constitution of 1876, and even though it be held not adopted as a part of the Constitution, yet the ordinance has the full force and effect of law as the result of the legislative power vested in the convention.

■ It is well settled, and may not be regarded as a matter of legal doubt, that a sale of real estate made under an execution after the return day on the writ is void and the purchaser acquires no title. Towns v. Harris, 13 Tex. 507; Mitchell v. Ireland, 54 Tex. 301; Robinson v. Monning Dry Goods Co. (Tex. Civ. App.) 211 S. W. 535. There-

fore, if the general principle stated has no application to the present case it would be so because the grounds, as urged by the appellees, that the writ remained in full force at the date of the levy and sale by the express provision of law extending the return day as previously fixed by law. In the proceedings of the constitutional convention appears a duly adopted ordinance, reading, as far as need be set out:

"An Ordinance Fixing the Terms of the District Courts of the State of Texas.

"Be it ordained by the people of Texas in Convention assembled, that until otherwise provided by law, the terms of the District Courts of the several judicial districts shall be as hereinafter prescribed: * * *

"Section 7. That the District Courts of the Seventh Judicial District be holden at the times hereinafter specified, to-wit: * * * In the County of Gregg, on the Eighteenth Mondays after the second Mondays in March and September, and may continue in session two weeks. * * *

"Section 27. All writs and process, civil and criminal, heretofore issued by or from the District Courts, in the several counties of this State, and made returnable to the former terms of said courts, as said terms are now fixed by law, shall be returnable to the next ensuing terms of said District Courts in each county, as they are prescribed in this ordinance; and all such writs and process that may be issued by or from said courts at any time within five days next before the holding of the next ensuing terms of said courts, as prescribed herein, are hereby made returnable to said terms respectively; and all such writs and process hereinbefore mentioned are hereby legalized and validated, to all intents and purposes, as if the same had been made returnable to the term or terms of said court, as the terms thereof are herein prescribed.

"Section 28. That in case where the time has partly elapsed for holding any term of the District Court, as herein prescribed, at the time of the qualification of the District Judge of said District, then said Judge shall proceed to hold said court for the remainder of said term." 8 Gammel's Laws of Texas, pp. 763, 766, 774.

■ The above ordinance was adopted by the constitutional convention in the purpose of effecting a transition from the old Constitution to the new, when the new Constitution was put into effect, by fixing the time of convening the courts in the rearrangement of the judicial districts throughout the state, with provision regulating all pre-existing and pending writs and process. Its terms are clear and unmistakable. The intention appears especially to have all pending writs and process continue in full force and in all things legal and valid, until such later day

of return altered by the law. As will be observed, by express provision of section 27: (1) The term of court to which pre-existing and pending "writs and process" were made returnable was altered to the later date, namely, "to the next ensuing terms of said District Courts, * * * as they are prescribed in' this ordinance," and (2) all such pre-existing and pending "writs and process" were declared "hereby legalized and validated, to all intents and purposes, as if the same had been made returnable to the term or terms of said courts, as the terms thereof are herein prescribed." Such a general provision has, as was intended, the same effect as a saving clause in a repealing statute. A saving clause is intended to save something which would otherwise be lost. Legal objection may not be predicated against such cumulative and remedial provision. A provision of the kind, being only cumulative in its nature, could not operate to the legal injury of a defendant in execution for the provision for a return day is beneficial mainly, if not solely, to the plaintiff, because it fixes a time when he may expect the enforcement of his judgment, by compelling the officer to have the writ satisfied. The defendant in execution, provided he has notice of the time of sale, has no interest in merely the time of return, whether it be returnable in thirty days or three months. It is believed that where the term of court to which the writ of execution is returnable is afterwards, as here done, altered by law to a later date, the writ remains in full force until such later day. And it is thought the provisions of the act ought to be interpreted in such manner as that it may have effect on subjects generally relating to legal writs and process, as well preliminary proceedings in court, as for instance citation and subpœnas, as subsequent writs, as execution and foreclosure sales. The general words "writs and process," as used in section 27, being given a full and general and not a limited significance, may be regarded as including a writ of execution. And the ordinance purporting to apply to all writs and process "made returnable to the former terms of said courts" would include within its purview the present writ of execution. The present writ was actually made returnable "on or before the next term of said district court," and the statute provided, as before shown, that executions shall be made returnable "on or before the next term of the court" after issuing.

Whether or not the ordinance became legally operative either upon passage, as within the power of the convention, or has been legally adopted as a part of the Constitution, presents a question of interest and of vital importance in the decision of the appeal. A constitutional convention is not a co-ordinate branch of the government, but is a body of representatives of the people convened only on special occasion, and for the purpose of revising or framing a Constitution. The powers it has are usually expressly conferred upon it, together with such implied powers as may be necessary to carry into effect those expressly conferred. The authority of the constitutional convention to pass ordinances, which are temporary enactments, and give them validity, as a rule, depend upon the powers conferred upon them by the law which authorizes their assemblage. Where it is not provided that the convention shall have the power of independent legislation, the validity of such ordinances depends on their submission to the people and their ratification in due form. Quinlan v. H. & T. C. Rwy., 89 Tex. 356, 34 S. W. 738. The power, though, of the convention of 1875 to deal by ordinance with necessary incidental legislation without submission for adoption to a popular vote, appears, it is believed, clear and unmistakable. But the question of necessity of submission of an ordinance to a vote of the people would be a matter aside entirely in the present case, for by very act of the convention itself it was provided, namely: "No ordinance passed by this Convention and not submitted for the ratification of the people except that postponing the election and that submitting the Constitution to a vote of the qualified electors shall, in any sense, be deemed operative, as affecting the rights of the State, or the rights and obligations of any person, association or corporation within the State, or having rights therein, or obligations thereto, either to confirm, release, relieve or modify the same, unless the Constitution shall be ratified by the qualified electors of the State of Texas." 4 Sayles' Texas Stat. p. 599; 8 Gammel's Texas Laws, p. 753.

And the very ordinance here in question on appeal was undertaken to be submitted as a part of the Constitution, namely: Article 5, section 14. "The judicial districts in this state and the time of holding the courts therein are fixed by ordinance forming part of this constitution, until otherwise provided by law." Section 14, it is thought, declares, as was plainly intended it should do, that the "Ordinance," which fixed the terms of the district courts throughout the state, shall be a constituent part of the new Constitution until the arrangements made by it may be changed by the Legislature. The words "forming a part" of the new Constitution are the opposite of excepting out and not to be effective for that purpose. The "ordinance" was by way of reference to the provisions of the document, and would include the document as a whole with sections 27 and 28, as it was passed and adopted by the convention. An ordinance appended to the Constitution may be regarded as part of the fundamental law. Stewart v. Crosby,

15 Tex. 546. As a method of legislation, in order to avoid unnecessary verbiage, express reference may be made to laws for the purpose of adopting the provisions of the law referred to. 59 C. J. p. 610, §§ 167, 168. Therefore as the Constitution was adopted by vote of the people and as the ordinance was an integral part of it, such ordinance must be considered as legally adopted by vote of the people upon its submission to them. As a consequence the execution in evidence would then be existing and valid at the date of the levy and the sale. The Constitution became effective on April 18, 1876, at which date the execution was not functus officio but valid. The altered and new term of court for return of the execution became the "eighteenth Monday after the second Monday in March" in 1876, which was the second Monday in July, 1876, being July 17, 1876. The district court of Gregg county was actually begun and held on July 17, 1876, after the date of the sale of the land on July 4, 1876.

 As an ordinance appended to a Constitution newly adopted, which contains provisions for the adjustment of matters affected by the change from the old to the new Constitution, forms a part of the Constitution so far as its temporary purposes go, such ordinance may not prevail or supersede the provisions of the permanent part of the Constitution. In this view there arises the question of whether or not section 27 of the ordinance is inconsistent with section 53 of article 16 of the Constitution, which reads: "Sec. 53. That no inconvenience may arise from the adoption of this constitution, it is declared that all process and writs of all kinds which have been or may be issued and not returned or executed when this constitution is adopted, shall remain valid, and shall not be, in any way, affected by the adoption of this constitution." There is not necessarily repugnancy or inconsistency between the provision in section 53 that all writs and process "shall not be, in any way, affected by the adoption of this constitution," and the provision in section 27 changing the terms of court to which pending writs and process shall be returnable. Although the language used in section 53 is prohibitory it is to be understood as to be unequivocal negation against in any way disturbing adversely pending writs as they were at the time the Constitution becomes operative. Section 27 of the ordinance was dealing particularly with pending writs made returnable to the former terms of the courts as they existed under the laws prior to the Constitution becoming effective. It is not lightly to be presumed that any provision deemed essential to be incorporated in an instrument so solemn and enduring as a Constitution was designed to be inconsistent or repugnant rather than cumulative or auxiliary to an appended ordinance.

 It is thought the second point may not be sustained that the sale was void and ineffectual, because the description of the land in the levy and the sheriff's deed was insufficient to identify the land levied on and sold. The description was not utterly devoid of any manner of identity, and therefore not void as matter of pure law. Busby v. Smith (Tex. Civ. App.) 53 S.W.(2d) 138; Harkey v. Cain, 69 Tex. 146, 6 S. W. 637; Blackwell v. Scott (Tex. Civ. App.) 223 S. W. 334. The levy and sale of 320 acres of land of which 200 acres was a rural homestead passed title to 120 acres subject to be partitioned. Wilson v. Smith, 50 Tex. 365; Beall v. Hollingsworth (Tex. Civ. App.) 46 S. W. 881; articles 3841-3858. It was sufficiently proven that W. G. Carroll, the purchaser, sued John N. Reynolds in trespass to try title and by agreed judgment W. G. Carroll was decreed the title to 120 acres in a body after John N. Reynolds should designate the 200-acre homestead so as to embrace the improvements on the same. Afterwards the purchasers under W. G. Carroll rendered 120 acres for taxes and conveyed the east 120 acres by field notes. The appellees acquired the 120 acres through deed in 1907, and the 120 acres has been segregated from the 200 acres by deed and occupancy for more than twenty years.

It is concluded that the judgment should be affirmed.